David S. Elder (TX 06507700)
Benjamin H. Price (TX 24060441)
GARDERE WYNNE SEWELL LLP
1601 Elm Street, Suite 3000
Dallas, Texas  75201-4761
Telephone:  (214) 999-3000
Facsimile:  (214) 999-4667

COUNSEL FOR BT AND MK ENERGY AND
COMMODITIES, LLC

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## FORT WORTH DIVISION

| | | |
|---|---|---|
| **In re:** | § | Case No. 10-47176-dml11 |
| | § | |
| | § | |
| **REOSTAR ENERGY CORPORATION,** | § | Chapter 11 |
| **et. al.** | § | (Jointly Administered) |
| | § | |
| Debtors. | § | Preliminary Hearing: January 6, 2011, |
| | § | at 9:30 am (CST) |

## MOTION FOR RELIEF FROM THE AUTOMATIC STAY

**PURSUANT TO LOCAL BANKRUPTCY RULE 4001-1(b), A RESPONSE IS REQUIRED TO THIS MOTION, OR THE ALLEGATIONS IN THE MOTION MAY BE DEEMED ADMITTED, AND AN ORDER GRANTING THE RELIEF SOUGHT MAY BE ENTERED BY DEFAULT.**

**ANY RESPONSE SHALL BE IN WRITING AND FILED WITH THE CLERK OF THE UNITED STATES BANKRUPTCY COURT AT 501 W. TENTH STREET, FORT WORTH, TX 76102-3643 ON OR BEFORE THE CLOSE OF BUSINESS ON JANUARY 3, 2011, WHICH IS AT LEAST 14 DAYS FROM THE DATE OF SERVICE HEREOF.  A COPY SHALL BE SERVED UPON COUNSEL FOR THE MOVING PARTY AND ANY TRUSTEE OR EXAMINER APPOINTED IN THE CASE. ANY RESPONSE SHALL INCLUDE A DETAILED AND COMPREHENSIVE STATEMENT AS TO HOW THE MOVANT CAN BE "ADEQUATELY PROTECTED" IF THE STAY IS TO BE CONTINUED.**

BT and MK Energy and Commodities, LLC ("**BTMK**"), hereby files this *Motion for Relief from the Automatic Stay* (the "**Motion**").  In support of the Motion, the BTMK respectfully states as follows:

**MOTION FOR RELIEF FROM THE AUTOMATIC STAY** – Page 1

# I.
# PRELIMINARY STATEMENT

Through this Motion, BTMK respectfully requests for the Court to grant relief from the automatic stay so that BTMK can enforce its bargained-for contractual rights pursuant to certain loan documents. The Debtors are not capable of adequately protecting BTMK's interests, as no equity cushion is present and the value of BTMK's collateral is rapidly declining. Mineral leases provide the primary security for BTMK in this case. By definition, the operation of mineral leases will result in a decline in the value of the underlying reserves, and the Debtors are producing $150–200,000 of oil and gas *per month*. The Debtors are depleting BTMK's collateral pool and cannot generate the financing necessary to acquire new leases or drill new wells, and the Debtors have incurred huge operating losses in recent years. Furthermore, after representing to the Court that they would be selling their Barnett Shale Assets within 30 days, the Debtors have inexplicably decided to halt that sale. The situation is exacerbated by intolerable conflicts of interest that exist between the Debtors and related companies owned by M.O. ("Trey") Rife III, the CEO and majority shareholder of ReoStar. Clearly, there is cause for the Court to terminate the automatic stay.

# II.
# JURISDICTION AND VENUE

1. The Court has jurisdiction over this matter under 28 U.S.C. §§ 157 and 1334. The predicates for the relief requested herein are 11 U.S.C. §§ 105, and 362(d) and Rule 4001 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"). This matter is a core proceeding under 28 U.S.C. § 157(b)(2).

# III.
# BACKGROUND

2. On November 1, 2010 (the "**Petition Date**"), ReoStar Energy Corporation ("**ReoStar Energy**") and certain affiliates[1] (together with ReoStar Energy, the "**Debtors**") filed voluntary petitions for relief under chapter 11 of the United States Code, 11 U.S.C. §§ 101 *et seq.* (the "**Bankruptcy Code**"). The Debtors' cases are being jointly administered pursuant to an order of the Court entered on November 10, 2010.

### A.     BTMK's Claims Against the Debtors

3. BTMK's claims against the Debtors were acknowledged through the *Stipulation of Facts for Use at Hearing on Debtors' Motion for Interim and Final Orders Authorizing Use of Cash Collateral Pursuant to 11 U.S.C. § 363* [Docket No. 39] (the "**Stipulation**") filed by the Debtors and BTMK on December 3, 2010. As set forth in the Stipulation:

   i. On or about October 30, 2008, ReoStar Energy, as borrower, and Union Bank, N.A. ("**Union Bank**"), as lender, entered in to that certain Credit Agreement in the principal amount of $25,000,000,00. On or about October 28, 2008, consistent with the Credit Agreement, ReoStar Energy, as borrower, and Union Bank, as lender, entered into the certain Promissory Note in the principal amount of $25,000,000.00 (the "**Note**").[2]

   ii. The Note is secured by those certain Deeds of Trust, Security Agreements, Financing Statements, and Assignment of Production, Guaranty Agreements (executed on behalf of the Debtors) and other collateral instruments (collectively the "**Collateral Instruments**"). These Collateral Instruments were executed in favor of Union Bank on October 30, 2008, and are identified in Exhibit B attached hereto.[3]

---

[1] These affiliates include ReoStar Gathering, Inc., ReoStar Leasing, Inc., and ReoStar Operating, Inc.
[2] A copy of the Note is attached hereto as Exhibit A.
[3] The individual Collateral Instruments are voluminous and have therefore not been attached to the Motion. Copies are available upon request to BTMK's counsel of record in this case.

**MOTION FOR RELIEF FROM THE AUTOMATIC STAY** – Page 3

    iii.    ReoStar Energy's obligations under the Note, Credit Agreement, Collateral Instruments and related transactional instruments and rights relating thereto and thereunder (the "**Loan Documents**") were assigned to BTMK through a transaction that closed on August 17, 2010. ReoStar Energy consented to the assignment of the Loan Documents to BTMK pursuant to a Consent Agreement (the "**Consent Agreement**") dated August 17, 2010, and attached hereto as Exhibit C.

4.    As noted in the Consent Agreement, ReoStar Energy was in default of certain of its obligations under the Loan Documents when the Loan Documents were assigned to BTMK. On October 1, 2010, BTMK sent a notice to ReoStar Energy accelerating the maturity of the Note. As of the Petition Date, the Debtors were indebted to BTMK in the amount of approximately $11,184,684.93 plus additional fees, costs, expenses and other charges to which BTMK is entitled (collectively, the "**BTMK Debt**"). As of the Petition Date, the BTMK Debt consisted of at least the following amounts:

| | |
|---|---|
| Principal Balance | $10,800,000.00 |
| Interest to 9/30/10 | $311,942.47 |
| Interest 9/30/10 to 11/1/10 | $52,742.46 |
| Pre-petition Attorneys Fees | $20,000.00 |
| **Total** | **$11,184,684.93** |

    B.    **Interim Cash Collateral Approval**

5.    The Debtors' obligations to BTMK are secured by liens on all of the production from ReoStar Energy's oil and gas, as well as any other cash proceeds. Substantially all of ReoStar Energy's income constitutes "cash collateral" within the meaning of § 363(a) of the Bankruptcy Code (the "**Cash Collateral**").

6.    On November 1, 2010, the Debtors filed the *Debtors' Motion for Interim and Final Orders Authorizing Use of Cash Collateral Pursuant to 11 U.S.C. § 363* [Docket No. 4]

(the "**Cash Collateral Motion**"), requesting the Court's authority to use the Cash Collateral and informing the Court that the Debtors "need to use the Cash Collateral in order to operate and manage their businesses after the Petition Date and until the time of confirmation." Cash Collateral Motion at ¶ 8. BTMK agreed to allow the Debtors to use the Cash Collateral until a final hearing could be held, and the terms of this use are set forth in the Court's *Agreed Interim Order Authorizing Debtors' Use of Cash Collateral* [Docket No. 15] (the "**Cash Collateral Order**").

7. At the cash collateral hearing on December 6, 2010, the Debtors advised the Court that they had agreed to sell their principal asset – the so-called Barnett Shale Assets – for $10 million. This agreement was evidenced by a *Purchase and Sale Agreement* [see Debtors' Ex. 11 at Cash Collateral hearing] signed by ReoStar and Venro Petroleum Corp. Based on that *Purchase and Sale Agreement* and other evidence presented at that hearing, the Court authorized the Debtors' continued use of the Cash Collateral for an additional thirty (30) days.

## IV.
## RELIEF REQUESTED AND BASES THEREFOR

8. Through this Motion, BTMK respectfully requests for the Court to terminate the stay imposed by section 362 of the Bankruptcy Code so that BTMK can take any and all actions necessary to exercise its rights and remedies under the Loan Documents and state law.

9. Relief from the automatic stay is governed by 11 U.S.C. § 362(d). In relevant part, section 362(d) provides that:

> On request of a party in interest and after notice and a hearing, the court shall grant relief from the stay…
>
> (1) for cause, including the lack of adequate protection of an interest in property of such party in interest….

11 U.S.C. § 362(d)(1).

### A. Lack of Adequate Protection

10. The term "cause" is not defined in the Bankruptcy Code; thus, courts are free to determine it on a case-by-case basis. *In re Reitnauer*, 152 F.3d 341, 343 n.4 (5th Cir. 1998); *In re Wilson*, 116 F.3d 87, 90 (3rd Cir. 1997) (opining that cause is not defined in the Bankruptcy Code, "leaving courts to consider what constitutes cause based on the totality of the circumstances in each particular case"). Whether cause exists is committed to the discretion of the bankruptcy court, and the bankruptcy court's decision will be overturned only if there was an abuse of discretion. *MacDonald v. MacDonald (In re MacDonald)*, 755 F.2d 715, 717 (9th Cir. 1985).

11. A lack of "adequate protection" is cause to grant relief from the automatic stay. *See* 11 U.S.C. § 362(d)(1). Adequate protection is determined on a case-by-case basis and "its focus is protection of the secured creditor from diminution in the value of its collateral during the reorganization process." *In re First South Sav. Assoc.*, 820 F.2d 700, 710 (5th Cir. 1987) (quoting *In re Beker Indus.*, 58 B.R. 725, 736 (Bankr. S.D.N.Y. 1986); *see also United States Ass'n of Texas v. Timbers of Inwood Forest Assoc., Ltd.*, 484 U.S. 365, 370 (1988) (opining that a creditor's interest in property is not adequately protected if the collateral is declining in value at a rate faster than the debt secured by that property is serviced or paid down). "To establish a *prima facie* case for cause due to a lack of adequate protection, a movant must initially demonstrate that it holds a claim, secured by a valid, perfected lien upon estate property and that a decline in the value of its collateral is either occurring or is threatened…" *In re Kowalsky*, 235 B.R. 590, 595 (Bankr. E.D. Tex. 1999) (internal citations omitted); *see also In re Kleibrink*, 346 B.R. 734, 760 (Bankr. N.D. Tex. 2006) (noting that a movant must demonstrate that decline in

the value of its collateral is either occurring or threatened to establish a prima facie case for cause for relief from the automatic stay).

12.     BTMK's collateral is substantially declining in value on an ongoing basis. For each month that oil and gas is produced by the Debtors, the oil and gas available to repay BTMK's secured debt is reduced by approximately $150–200,000. "By definition, an oil lease in operation is a depleting asset" and a "debtor's intention to operate the leases will necessarily result in a depletion in the reserves and consequently a decline in the value of the leases underlying those reserves." *In re Leavell*, 56 B.R. 11, 14 (Bankr. S.D. Ill. 1985). If a debtor "wishes to prevent the automatic stay from being terminated the debtor must propose a satisfactory means for maintaining the petition date value of the leases against this depletion and decline…" *Id.* Also, the Debtors' tax returns and SEC filings reflect that the Debtors have been incurring <u>huge</u> operating losses for years:

| Time Period | Losses from Operations (before income tax) |
|---|---|
| 2008 | $2,464,236 |
| 2009 | $4,184,918 |
| 1st six months of 2010 | $2,107,077 |

13.     The only way for the Debtors to compensate BTMK for the $200,000 per month reduction in its collateral would be for the Debtors to acquire new leases or to drill new wells. However, the Debtors are doing neither. In order to acquire new leases or drill new wells, the Debtors would require funding from substantial new equity or subordinated debt. However, the Debtors have already incurred substantial subordinated debt from related parties (including a partnership controlled by M. O. "Trey" Rife III ("**Mr. Rife**"), ReoStar's CEO, chairman of the board of directors, and majority shareholder). There is no likelihood that the Debtors will be able to generate new funding from a capital contribution or subordinated debt.

**MOTION FOR RELIEF FROM THE AUTOMATIC STAY** – Page 7

14. More significantly, the Debtors have just advised BTMK that – contrary to the Debtors' representations at the December 6 cash collateral hearing – they have decided <u>not</u> to sell the Barnett Shale Assets. This decision exposes BTMK to further diminution in value of the collateral pledged to secure the loan.

15. The "equity cushion" available to protect BTMK is minimal, as the value of the Debtors' real property (primarily consisting of the oil and gas leases) is listed at $11.3 million in the Schedules, and the Debtor's only other significant assets are accounts receivables owed by companies owned by Mr. Rife. BTMK's interest in the collateral will be further diminished on January 1, 2011, when the ad valorem taxes ($50,000+) applicable to the Debtors' oil and gas leases become due and payable; those ad valorem create a superior lien on the oil and gas leases. *See, e.g., In re McKillips*, 81 B.R. 454, 458 (Bankr. N.D. Ill. 1987) (internal citations omitted) ("Case law has almost as uniformly held that an equity cushion under 11% is insufficient to constitute adequate protection."). Likewise, the replacement liens provided by the Debtor through the Cash Collateral Order cover a diminishing pool of collateral and are therefore not sufficient to protect BTMK's interests. *In re CHA Hawaii, LLC*, 426 B.R. 828, 838-839 (Bankr. D. Haw. 2010) ("Debtors often provide adequate protection for an interest in prepetition accounts by granting a replacement lien in postpetition accounts. The notion is that the debtor will generate new accounts at least as quickly as it consumes the proceeds of the old accounts, so the value of the creditors' collateral base does not decline. Because the debtors' accounts have declined and the debtors continue to incur operating losses, the debtors have not carried their burden of proving that this premise will hold true in this case.").

16. Clearly, the substantial monthly decline in the value of BTMK's collateral – coupled with the Debtors' decision not to sell their Barnett Shale Assets – leaves BTMK without

adequate protection. The lack of a sufficient equity cushion and the diminishing value of BTMK's replacement liens further buttresses this point. Since the Debtors cannot adequately protect BTMK, the Court should lift the automatic stay so that BTMK can enforce its contractual rights under the Loan Documents.

> B. **Blatant Conflicts of Interest Further Threaten the Value of BTMK's Collateral**

17. "It has long been recognized that using the bankruptcy process to promote individual interests in a manner not consistent with the legislative purposes of the Bankruptcy Code is an abuse of the jurisdiction of the bankruptcy courts." *In re Canal Place, L.P.*, 921 F.2d 569, 578 (5th Cir. 1991) (internal citations omitted). Based on the blatant conflicts of interest in this case due to the business holdings of Mr. Rife, BTMK submits that further cause exists for the Court to lift the automatic stay.

18. Mr. Rife is the majority shareholder and CEO of ReoStar Energy. To the detriment of interested parties in this case, Mr. Rife has irreconcilable conflicts of interest with several companies which are affiliates of – and have ongoing business dealings with – the Debtors:

- **Rife Energy Operating, Inc**.: Mr. Rife is the sole shareholder of Rife Energy Operating, Inc., which was (and still is) the operator for the Barnett Shale Assets. As indicated in the Schedules, Rife Energy Operating owes the Debtors $1,289,000. This receivable is purportedly subject to an offset, but Scott Allen (CFO of ReoStar Energy) has admitted that, net of any setoff, Rife Energy Operating still owes the Debtors about $600,000.

- **Texas MOR, Inc.**: Mr. Rife is also the sole shareholder of Texas MOR, Inc., which was (and still is) the operator for the Debtors' wells in Navarro County, Texas. As noted in the Schedules, Texas MOR owes the Debtors $270,000.

- **Efire, Ltd.**: Mr. Rife is the manager of Efire GP, LLC, the general partner of

Efire, Ltd., which hold a $3.1 million subordinated note payable by the Debtors. During the year prior to the bankruptcy filing, Efire, Ltd., received payments in excess of $172,000 on account of this subordinated note. None of those payments – all received within the preference period – have been repaid.

19. "Cause, for either dismissal or relief from the stay, may be found based on unenumerated factors, including 'bad faith,' or failure to deal with creditors fairly even where 'bad faith' is not found." *In re AMC Realty Corp.*, 270 B.R. 132, 140 (Bankr. S.D. N.Y. 2001) (internal citations omitted). It is painfully obvious that Mr. Rife is acting in the best interests of Rife Energy Operating, Inc., Texas MOR, Inc., and Efire, Ltd., and not the Debtors. Furthermore, Mr. Rife has a prior history of disregard for the provisions of the Bankruptcy Code. Mr. Rife was the president and sole shareholder of Rife Oil Properties, Inc., which filed Chapter 11 in this District in 2002; Judge Houser ultimately appointed a trustee in that case due to "significant errors in the schedules and statement of financial affairs and mismanagement." *In re Rife Oil Properties, Inc.*, Case No. 02-42745 (BJH) (Bankr. N.D. Tex. 2003) [Order at Docket No. 115]. The interests of BTMK are not being adequately protected because Mr. Rife is clearly favoring his other business interests.

### C. Any Order Lifting the Automatic Stay Should be Effective Immediately

20. BTMK also respectfully requests that any order granting this Motion be effective immediately. Bankruptcy Rule 4001 authorizes this Court to shorten or to eliminate the 14-day stay imposed on orders modifying the automatic stay. FED. R. BANKR. P. 4001(a)(3); *see* Collier on Bankruptcy ¶ 362.08[9] (Alan N. Resnick & Henry J. Sommer eds., 16th ed.) ("[Federal Rule 4001] authorizes the court to shorten or eliminate the 14-day stay. The rule does not provide the grounds on which a court would do so, but indirectly suggests that a risk of irreparable damage to the creditor would provide such grounds.").

21.   As discussed above, the Debtors are not adequately protecting BTMK. Interest and other liabilities continue to accrue and the value of BTMK's collateral is rapidly declining. Without immediate relief from the automatic stay, BTMK's interests will be irreparably harmed. As such, BTMK requests that this Court direct that any order granting this Motion is effective immediately and not stayed by Bankruptcy Rule 4001 or otherwise.

Dated: December 20, 2010

Respectfully submitted,

**GARDERE WYNNE SEWELL, LLP**

*/s/ Benjamin H. Price*
David S. Elder (TX 06507700)
Benjamin H. Price (TX 24060441)
GARDERE WYNNE SEWELL LLP
1601 Elm Street, Suite 3000
Dallas, Texas  75201-4761
Telephone:  (214) 999-3000
Facsimile:  (214) 999-4667

COUNSEL FOR BT AND MK ENERGY AND
COMMODITIES, LLC

## CERTIFICATE OF CONFERENCE

I certify that, on December 20, 2010, I conferred with Debtor's counsel, Bruce Akerly, about the relief requested in the Motion. The Debtor opposes the relief requested in the Motion.

/s/ *Benjamin H. Price* _____
Benjamin H. Price

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on December 20, 2010, a true and correct copy of the foregoing document was served (i) electronically by the Court's PACER system on all parties receiving notices in this case and (ii) via first class United States Mail, postage prepaid, on the following:

ReoStar Energy Corporation
3880 Hulen Street
Suite 500
Fort Worth, TX 76107

Bruce W. Akerly
Cantey Hanger LLP
1999 Bryan Street , Suite 3330
Dallas, TX 75201

William T. Neary
United States Trustee
Earle Cabell Federal Building
1100 Commerce St., Room 976
Dallas, TX 75242

Internal Revenue Service
PO Box 21126
Philadelphia, PA 19114

Alan Rae
CMN, Inc,
2644 Kirkwood Highway, Suite 290
Newark, DE 19711

Alphagraphics
5836 Camp Bowie Blvd
Fort Worth,TX76I07

AT&T Mobility
PO Box 6463
Carol Stream, IL 60797 -6463

BCM Energy Partners LLC
245 Park Avenue, Fl 24
New York, NY 10167

Betsy Price
Tarrant County Tax Assessor
100 E, Weatherford
Fort Worth, TX 76196-0001

BlueCross Blue Shield of Texas
P. O. Box 660049
Dallas, TX 75266-0049

Bracewell & Giuliani LLP
P. O. Box 848566
Dallas, TX 75284-8566

Broadridge
P. O. Box 23487
Newark, NJ 07189

CBEYOND
P.O. Box 848432
Dallas, TX 75284-8432

Ceridian
P. O. Box 10989
Newark, NJ 07183

Chase MC – Mark Zouvas
Cardmember Service
P. O. Box
Palatine, IL 60094-4014

Conpuforms Data Products Inc.
2100 Baird Farm Road
Arlington, TX 76007

Cooke County Clerk
Cooke County Courthouse
215 W. Pecan
Gainesville, TX 76240

Corsicana ISD Tax Office
601 N. 13th Street
Corsicana, TX  75110

Dell Financial Services
Payment Processing Center
P.O. Box 5292
Carol Stream, IL 60197 -5292

Denton County Clerk
1450 E. McKinney St. #11
Denton, TX 76209

EFIRE, LTD.
3880 Halen Street
Suite 510
Fort Worth,TX 76l07

FedEx
P. O. Box 660481
Dallas, TX 75266-0481

Forrest A. Garb & Associates, Inc.
5310 Harvest Hill Road
Suite 275
Dallas, TX 75230-5805

Fort Dearborn Life Insurance Company
36788 Eagle Way
Chicago, IL 60678-1367

Frost Insurance
P. O. Box 33528
Fort Worth, TX 76162

Frost National Bank
P. O. Box 34746
San Antonio, TX 78265

**MOTION FOR RELIEF FROM THE AUTOMATIC STAY** – Page 13

| | |
|---|---|
| Gas Finders, LLC<br>3920 Shavano Drive<br>Austin, TX 78749 | Goodrich Postnikoff<br>777 Main Street<br>Suite 1360<br>Fort Worth, TX 76l02 |
| Greenberg Traurig, Attorneys at Law<br>3161 Michelson Drive<br>Suite 1000<br>Irvine, CA 92612-4410 | Hulen South Tower Limited<br>c/o Isenberg Management Associates, Inc.<br>400 S. Zang Blvd., Ste 1020<br>Dallas, TX 75208 |
| INC, PLAN (USA)<br>Trolley Square, Suite 26C<br>Wilmington, DE 19806 | Imperial Credit Corporation<br>P. O. Box 200455<br>Dallas, TX 78320-0455 |
| Isenberg Management<br>400 South Zang Blvd.<br>Suite 1020<br>Dallas, TX75208 | Mark Zouvas<br>3880 Hulen Street, Suite 500<br>Fort Worth, TX 76107 |
| Ken Douglas<br>5704 La Vista Dr.<br>Dallas, TX  75206 | Killman, Murrell & Company PC<br>1931 E. 37th Street, Suite 7<br>Odessa, TX79762 |
| Russell P Hudson, Tax Assessor<br>Navarro County<br>P.O. Box 1070<br>Corsicana, TX 75151-1070 | Nevada Agency and Trust Company<br>50 West Liberty Street<br>Suite 880<br>Reno, NV 89501 |
| On-Site Computer Solutions<br>5912 Sea Breeze Lane<br>Fort Worth, TX 76l35 | Paychex<br>8605 Freeport Pkwy, Suite 100<br>Irving, TX 75063 |
| PetroGrowth Advisors<br>433 E. Las Colinas Blvd, St.<br>Irving, TX 75039 | PG Energy Holdings, LP<br>433 E, Las Colinas Blvd., Ste 1200<br>Irving, TX 75039 |

| | |
|---|---|
| Precision Edgar<br>PO Box 864652<br>Plano, TX  75086-4652 | Premium Assignment<br>P. O. Box 3100<br>Tallahassee, FL 32315-3100 |
| Railroad Commission of Texas<br>P.O. Box 12967<br>Austin, TX 78711-2967 | Rife Energy Operating<br>3880 Hulen, Ste 510<br>Fort Worth, TX 76107-5111 |
| Robert A. Lambert<br>608 South Lamar<br>Eastland, TX 76448 | Scott Allen<br>5005 Oak Mill Drive<br>Fort Worth, TX 76135 |
| Securities Transfer Corporation<br>2591 Dallas Parkway<br>Suite 102<br>Frisco, TX 75034 | Susan Hughes<br>Rt. 1, Box 343<br>Forestburg, TX 76239 |
| Tarrant Cnty Tax Assessor-Col<br>100 E. Weatherford<br>Fort Worth, TX 76196-0001 | Texas Mutual Insurance Company<br>P. O. Box 841843<br>Dallas, TX  75284-1843 |
| The Economist<br>PO Box 46978<br>St. Louis, MO 63146-6978 | Tommy Lou Inglish Moore<br>l217 Canden Hunt Drive<br>Lawrenceville, GA 30243 |
| Tritaurian Capital, Inc.<br>500 East 77th St, Suite 902<br>New York, NY 10162 | Vern Wilson<br>4606 Bogey Ct.<br>College Station, TX 77845 |
| Westron Communications<br>33l0 Keller Springs Road<br>Suite 100<br>Carrollton, TX 75005 | Tami King<br>White County Circuit Clerk/Recorder<br>300 N. Spruce<br>Searcy, AR  72143 |

| | |
|---|---|
| Wise County Clerk | U.S. Securities and Exchange Commission |
| 200 N. Trinity Street | Division of Corporate Finance |
| Decatur, TX 76234 | 100 F. Street, NE |
| | Washington, DC 20549-7010 |

*/s/ Benjamin H. Price*
Benjamin H. Price

**MOTION FOR RELIEF FROM THE AUTOMATIC STAY** – Page 16

DALLAS 2188880v.2