David S. Elder (TX 06507700)
Benjamin H. Price (TX 24060441)
GARDERE WYNNE SEWELL LLP
1601 Elm Street, Suite 3000
Dallas, Texas  75201-4761
Telephone:  (214) 999-3000
Facsimile:  (214) 999-4667

COUNSEL FOR BT AND MK ENERGY
AND COMMODITIES, LLC

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**FORT WORTH DIVISION**

| | | |
|---|---|---|
| **In re:** | § | **Case No. 10-47176-dml11** |
| | § | |
| | § | |
| **REOSTAR ENERGY CORPORATION,** | § | **Chapter 11** |
| **et. al.** | § | **(Jointly Administered)** |
| | § | |
| **Debtors.** | § | |
| | § | |

**MOTION TO RESTRICT CONTINUED USE OF CASH COLLATERAL**

BT and MK Energy and Commodities, LLC ("**BTMK**") files this *Motion to Restrict Continued Use of Cash Collateral* (the "**Motion**").[1]  In support of the Motion, BTMK respectfully states as follows:

**I.**
**PRELIMINARY STATEMENT**

Through this Motion, BTMK respectfully requests for the Court to restrict the Debtors further use of BTMK's cash collateral: specifically, no further cash collateral should be used to pay the fees of Cantey Hanger LLP ("Cantey").  The Debtors are not capable of adequately protecting BTMK's interests, as the value of BTMK's collateral is rapidly declining.  Mineral leases provide the primary security for BTMK in this case.  By definition, the operation of mineral leases will result in a decline in the value of the underlying reserves, and the Debtors are

---

[1] To the extent necessary, BTMK also seeks to modify the *Interim Order Authorizing Debtors to Employ Cantey Hanger LLP as Attorneys for the Debtors Nunc Pro Tunc to the Petition Date* [Docket No. 53].

producing $150–200,000 of oil and gas *per month*. The Debtors are depleting BTMK's collateral pool and cannot generate the financing necessary to acquire new leases or drill new wells. Furthermore, the Debtors have incurred huge operating losses in recent years.

There is nothing to suggest that the Debtors' estates are administratively solvent and there is no guarantee that all administrative claims in the Bankruptcy Case will be paid in full. During the initial cash collateral hearings in the Bankruptcy Case, the Cantey firm asserted that there was a sale pending for the Debtors' Barnett Shale Assets and that the purchase price would be in the $10 million range. After six months in Chapter 11, no sale has ever been consummated, and no real progress has been made in the Bankruptcy Case. Instead of seeking to find a buyer for its assets, ReoStar has initiated an adversary proceeding (described below) claiming that BTMK participated in a "breach of fiduciary duty" with ReoStar's former president. All the while, the administrative costs of these estates – most notably Cantey's fees – have continued to escalate, and no end appears in sight. The Debtors' have still not established a value for their assets and they have taken a defiant attitude towards creditors who have pressed them on this issue. The continued use of cash collateral to pay Cantey's fees is simply not warranted.

## II.
## JURISDICTION AND VENUE

1.      The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1334 and 157. This matter concerns the administration of these bankruptcy estates; accordingly, this is a core proceedings pursuant to 28 U.S.C. § 157(b)(2). Venue is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409. The predicates for the relief requested herein are 11 U.S.C. §§ 105(a), 361 and 363 as well as Rule 4001 of the Federal Rules of Bankruptcy Procedure.

## III.
## BACKGROUND

2.      On November 1, 2010 (the "**Petition Date**"), ReoStar Energy Corporation

("**ReoStar Energy**") and certain affiliates (together with ReoStar Energy, the "**Debtors**") filed

voluntary petitions for relief under chapter 11 of the United States Code, 11 U.S.C. §§ 101 *et*

*seq.* (the "**Bankruptcy Code**").  The Debtors' cases are being jointly administered under case

number 10-47176-dml11 (the "**Bankruptcy Case**") pursuant to an order of the Court entered on

November 10, 2010.

### A.      BTMK's Claims Against the Debtors

3.      BTMK's claims against the Debtors were acknowledged through the *Stipulation*

*of Facts for Use at Hearing on Debtors' Motion for Interim and Final Orders Authorizing Use of*

*Cash Collateral Pursuant to 11 U.S.C. § 363* [Docket No. 39] (the "**Stipulation**") filed by the

Debtors and BTMK on December 3, 2010.  As set forth in the Stipulation:

  i.    On or about October 30, 2008, ReoStar Energy, as borrower, and Union Bank,
        N.A. ("**Union Bank**"), as lender, entered in to that certain Credit Agreement in
        the principal amount of $25,000,000,00.  On or about October 28, 2008,
        consistent with the Credit Agreement, ReoStar Energy, as borrower, and Union
        Bank, as lender, entered into the certain Promissory Note in the principal amount
        of $25,000,000.00 (the "**Note**").

  ii.   The Note is secured by those certain Deeds of Trust, Security Agreements,
        Financing Statements, and Assignment of Production, Guaranty Agreements
        (executed on behalf of the Debtors) and other collateral instruments (collectively
        the "**Collateral Instruments**").  These Collateral Instruments were executed in
        favor of Union Bank on October 30, 2008.

  iii.  ReoStar Energy's obligations under the Note, Credit Agreement, Collateral
        Instruments and related transactional instruments and rights relating thereto and
        thereunder (the "**Loan Documents**") were assigned to BTMK through a

transaction that closed on August 17, 2010.[2]  ReoStar Energy consented to the assignment of the Loan Documents to BTMK pursuant to a Consent Agreement (the "**Consent Agreement**") dated August 17, 2010.

4.      ReoStar Energy was in default of certain of its obligations under the Loan Documents when the Loan Documents were assigned to BTMK. On October 1, 2010, BTMK sent a notice to ReoStar Energy accelerating the maturity of the Note.  As of the Petition Date, the Debtors were indebted to BTMK in the amount of approximately $11,184,684.93 plus additional fees, costs, expenses and other charges to which BTMK is entitled (collectively, the "**BTMK Debt**").  As of the Petition Date, the BTMK Debt consisted of at least the following amounts:

| Principal Balance | $10,800,000.00 |
| Interest to 9/30/10 | $311,942.47 |
| Interest 9/30/10 to 11/1/10 | $52,742.46 |
| Pre-petition Attorneys Fees | $20,000.00 |
| Total | $11,184,684.93 |

### B.      Interim Cash Collateral Approval

5.      The Debtors' obligations to BTMK are secured by liens on all of the production from ReoStar Energy's oil and gas, as well as any other cash proceeds.  Substantially all of ReoStar Energy's income constitutes "cash collateral" within the meaning of § 363(a) of the Bankruptcy Code (the "**Cash Collateral**").

6.      The Court has entered a series of Cash Collateral Orders (i) permitting the Debtors to use Cash Collateral (subject to a budget and other conditions) and (ii) granting BTMK, among other things, an administrative claim with a superpriority over other administrative claims "equal to the aggregate diminution in value of the Collateral resulting from

---

[2] The Loan Documents are voluminous and have therefore not been attached to this Motion.  Copies are available upon request to the undersigned.

the Debtors' use of Cash Collateral . . ." [See Docket Nos. 15, 57, 73 and 116.]  Assuming the

Debtors have followed their budget, the Debtors have already spent about $800,000 in Cash

Collateral during the 5+ months that these cases have been pending, and that amount is

increasing by more than $100,000 per month.  Given the nature of the Cash Collateral – the

proceeds of the sale of oil and gas – BTMK's collateral is not being "replaced" with new

collateral.  If these cases become administratively insolvent, BTMK would have a superpriority

over all other administrative claims, including claims for attorneys fees.

> **C.**   **Lawsuit Against BTMK and Mark Zouvas**

7.       On February 17, 2011, ReoStar filed Adversary Proceeding No 11-4022, against

its former president, Mark Zouvas, and BTMK.  Among other things, the Adversary Proceeding

claims [falsely] that BTMK somehow participated in a "breach of fiduciary duty" allegedly

committed by Mr. Zouvas.

**IV.**
**RELIEF REQUESTED AND BASIS THEREFOR**

8.       BTMK respectfully requests for the Court to restrict the further use of BTMK's

Cash Collateral: ReoStar should be prohibited from using any further Cash Collateral to pay the

fees of Cantey.

> **A.**   **The Debtors are Not Adequately Protecting BTMK's Interests**

9.       In order to use the Cash Collateral, the Debtors must prove by a preponderance of

the evidence that BTMK's interests are adequately protected.  11 U.S.C. § 363(p)(1); *In re*

*Goode*, 235 B.R. 584, 589 (Bankr. E.D. Tex. 1999).  Adequate protection "was designed to

insure that the secured creditor receives the value for which [it] bargained." *Martin v. United*

*States (In re Martin)*, 761 F.2d 472, 474 (8th Cir. 1985) (citing H.R. Rep. No. 595, 95th Cong.,

2d Sess. 339, reprinted in 1978 U.S.C.C.A.N. 5963, 6295).  "Congress in enacting § 363 of the

Code gave a special treatment to 'cash collateral' for the obvious reason that cash collateral is highly volatile, subject to rapid dissipation and requires special protective safeguards in order to assure that a holder of a lien on 'cash collateral' is not deprived of its collateral through unprotected use by the debtor." *Williams v. Am. Bank of Mid-Cities, N.A. (In re Williams)*, 61 B.R. 567, 575 (Bankr. N.D. Tex. 1986).

10.     Adequate protection is determined on a case-by-case basis and "its focus is protection of the secured creditor from diminution in the value of its collateral during the reorganization process." *In re First South Sav. Assoc.*, 820 F.2d 700, 710 (5th Cir. 1987) (quoting *In re Beker Indus.*, 58 B.R. 725, 736 (Bankr. S.D.N.Y. 1986); *see also United States Ass'n of Texas v. Timbers of Inwood Forest Assoc., Ltd.*, 484 U.S. 365, 370 (1988) (opining that a creditor's interest in property is not adequately protected if the collateral is declining in value at a rate faster than the debt secured by that property is serviced or paid down). The Debtor's showing of adequate protection "must not be illusory and, particularly in the context of the use of cash collateral, must be of the most indubitable equivalence." *In re Goode* at 589.

11.     BTMK's collateral is substantially declining in value on an ongoing basis. For each month that oil and gas is produced by the Debtors, the oil and gas available to repay BTMK's secured debt is reduced by approximately $150–200,000. "By definition, an oil lease in operation is a depleting asset" and a "debtor's intention to operate the leases will necessarily result in a depletion in the reserves and consequently a decline in the value of the leases underlying those reserves." *In re Leavell*, 56 B.R. 11, 14 (Bankr. S.D. Ill. 1985). If a debtor "wishes to prevent the automatic stay from being terminated the debtor must propose a satisfactory means for maintaining the petition date value of the leases against this depletion and

decline…" *Id.* Also, the Debtors' tax returns and SEC filings reflect that the Debtors have been

incurring <u>huge</u> operating losses for years:

| Time Period | Losses from Operations (before income tax) |
|---|---|
| 2008 | $2,464,236 |
| 2009 | $4,184,918 |
| 1st six months of 2010 | $2,107,077 |

12.     Beyond the "off the cuff" assertions of attorneys from the Cantey firm, there is

nothing to suggest that the Debtors' estates are administratively solvent and there is no guarantee

that all administrative claims in the Bankruptcy Case will be paid in full.  During the initial cash

collateral hearings in the Bankruptcy Case, the Cantey firm asserted that there was a sale pending

for the Debtors' Barnett Shale Assets and that the purchase price would be in the $10 million

range.  After six months in Chapter 11, no sale has ever been consummated, and no real progress

has been made in the Bankruptcy Case.  Instead of seeking to find a buyer for its assets, ReoStar

has initiated an adversary proceeding (described below) claiming that BTMK participated in a

"breach of fiduciary duty" with ReoStar's former president.  All the while, the administrative

costs of these estates – most notably Cantey's fees – have continued to escalate, and no end

appears in sight.  The Debtors' have still not established a value for their assets and they have

taken a defiant attitude towards creditors who have pressed them on this issue.  The continued

use of cash collateral to pay Cantey's fees is simply not warranted

**B.     Any Attorneys' Fees Should Not be Charged Against BTMK's Collateral**

13.     "In general, the claims of professionals, including those for compensation, may

not be satisfied out of encumbered assets."  COLLIER ON BANKRUPTCY ¶ 330.05[1] (Alan N.

Resnick & Henry J. Sommer eds., 16th ed.); *see also In re Westwood Plaza Apartments, Ltd.*, 154

B.R. 916, 921 (citing, *inter alia*, *In re Delta Towers, LTD*, 924 F.2d 74, 76 (5th Cir. 1991)) ("The

general rule in bankruptcy is that administrative expenses are charged against the estate and not

against secured creditors…. The debtor must look to unencumbered assets of the estate to pay

administrative expenses.").

14.     Courts typically recognize "two instances" in which such expenses are chargeable

against a secured creditor's collateral:

(i)     "when the expenses are for the direct and primary benefit of a
        creditor holding a security interest in the particular collateral as
        provided for in section 506(c)," or

(ii)     "when the secured lender consents to the application or charge."

*Id.* (citing *In re Flagstaff Foodservice Corp.*, 739 F.2d 73 (2d Cir. 1984);   *see also In re*

*Westwood* at 921 (noting that section 506(c) can provide "an exception to [the] general rule" that

"administrative expenses are charged against the estate and not against secured creditors").

15.     Through their *Expedited Motion for Approval of Revised Budget Relating to*

*Debtor's Use of Cash Collateral* [Docket No. 148] (the "**Debtors' Expedited Motion**"), the

Debtors asked the Court for the authority to <u>increase</u> their use of BTMK's cash collateral for the

primary purpose of prosecuting a bogus lawsuit against BTMK.   *See Expedited Motion for*

*Approval of Revised Budget Relating to Debtor's Use of Cash Collateral* at ¶ 13.   Needless to

say, BTMK does not consent to its cash collateral being used for such a purpose, and the

attorneys' fees generated would not be "incurred primarily for the benefit of the secured creditor

resulting in a quantifiable direct benefit to the secured creditor."   *See, e.g., In re Westwood* at

921-922.   After obtaining an expedited hearing date for May 3, ReoStar then withdrew the

Debtors' Expedited Motion solely because BTMK stated that it would oppose the relief

requested and seek to restrict the use of Cash Collateral.   Further use of the Cash Collateral to

pay Cantey's fees is simply not warranted.

**WHEREFORE**, BTMK respectfully requests that this Court grant (i) the relief requested herein – the Debtors should be prohibited from using any further Cash Collateral to pay the fees of Cantey – and (ii) such other and further relief as may be just and proper.

Dated: April 29, 2011

Respectfully submitted,

**GARDERE WYNNE SEWELL, LLP**

*/s/ Benjamin H. Price*
David S. Elder (TX 06507700)
Benjamin H. Price (TX 24060441)
GARDERE WYNNE SEWELL LLP
1601 Elm Street, Suite 3000
Dallas, Texas  75201-4761
Telephone:  (214) 999-3000
Facsimile:  (214) 999-4667

COUNSEL FOR BT AND MK ENERGY AND
COMMODITIES, LLC

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that, on April 29, 2011, a true and correct copy of the foregoing document was served (i) via this Court's PACER system on all parties receiving electronic notifications in this case, and (ii) via e-mail on the following individuals:

1. Bruce W. Akerly, esq. at bakerly@canteyhanger.com (also served via PACER)
2. Arthur A. Stewart, esq. at astewart@canteyhanger.com
3. Meredyth A. Kippes, esq. at meredyth.a.kippes@usdoj.gov (also served via PACER)

*/s/ Benjamin H. Price*
Benjamin H. Price

MOTION TO RESTRICT CONTINUED USE OF CASH COLLATERAL – Page 9

DALLAS 2213400v.6