

U.S. BANKRUPTCY COURT
NORTHERN DISTRICT OF TEXAS

**ENTERED**

TAWANA C. MARSHALL, CLERK
THE DATE OF ENTRY IS
ON THE COURT'S DOCKET

**The following constitutes the ruling of the court and has the force and effect therein described.**

_____
**United States Bankruptcy Judge**

**Signed May 30, 2012**

---

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION**

| | | |
|---|---|---|
| IN RE: | § | CASE NO. 10-47176 |
| | § | |
| REOSTAR ENERGY CORPORATION | § | CHAPTER 11 |
| ET AL., | § | |
| | § | |
| DEBTORS. | § | (Jointly Administered) |

**MEMORANDUM ORDER**

Before the court is the question of approval of the Third Amended Disclosure

Statement (the "Disclosure Statement"), filed in connection with Debtors' Third

Amended Joint Plan of Reorganization (the "Plan") filed by the above-named Debtors.

BT and MK Energy and Commodities, LLC ("BTMK"), Elizabeth Kay Inglish Aldridge,

individually and as the independent co-executrix of the estate of William Bailey Inglish,

deceased, Ann Inglish Knight, individually and as the independent co-executrix of

William Bailey Inglish, deceased, and Norma Ann Inglish Knight, individually (collectively, "Inglish"), and David Dodson ("Dodson"), individually and on behalf of his brother, sister and aunt, have filed objections to the Disclosure Statement. BTMK is Debtors' principal secured creditor. Inglish and Dodson are each parties to mineral leases claimed by Debtors as estate property; Inglish and Dodson take the position that some of those leases have terminated, and Inglish asserts an administrative expense claim against Debtors.[1] Because Inglish and Dodson, though clearly parties in interest, have asserted in their objections matters of concern only to constituencies of which they are not members, the court has discounted their objections to that extent. *See In re Ofty Corp.,* 44 B.R. 479, 481 (Bankr. D. Del. 1984) ("An entity may be [a] real party in interest and have standing in one respect while [it] may lack standing in another respect") (citing 4 JAMES WM. MOORE ET AL., MOORE'S FEDERAL PRACTICE, ¶ 17.07 (2d ed. 1984)); *see also In re Combustion Eng'g, Inc.,* 391 F.3d 190, 215 (3rd Cir. 2004) (citing *Lewis v. Casey,* 518 U.S. 343, 358 n. 6, 116 S.Ct. 2174, 2183, 135 L.Ed.2d 606 (1996) ("Nor does a plaintiff who has been subject to injurious conduct of one kind possess by virtue of that injury the necessary stake in litigating conduct of another kind, although similar, to which he has not been subject.")).

The court held a hearing respecting the Disclosure Statement and the objections on May 16, 2012. At that time, the parties presented argument and the court heard testimony from R. Kevin Russell, principal of Russco (as defined below).

This matter is subject to the court's core jurisdiction. 28 U.S.C. §§ 1334 and 157(b)(2)(A), (L), and (O). This memorandum order represents the court's findings of

---

[1]     Actually the leases are with one of Debtors, and Inglish's claim is against only one Debtor. Distinguishing among Debtors on this basis is not necessary in the present context.

fact and conclusions of law respecting adequacy and approval of the Disclosure

Statement. FED. R. BANKR. P. 7052 and 9014.

The Disclosure Statement was proposed and filed by Debtors in order to comply

with section 1125 of the Bankruptcy Code (the "Code").[2] Section 1125(b) provides:

> An acceptance or rejection of a plan may not be solicited after the commencement of the case under this title from a holder of a claim or interest with respect to such claim or interest, unless, at the time of or before such solicitation, there is transmitted to such holder the plan or a summary of the plan, and a written disclosure statement approved, after notice and a hearing, by the court as containing adequate information. The court may approve a disclosure statement without a valuation of the debtor or an appraisal of the debtor's assets.

Adequate information is defined in section 1125(a)(1) as follows:

> [I]nformation of a kind, and in sufficient detail, as far as is reasonably practicable in light of the nature and history of the debtor and the condition of the debtor's books and records, including a discussion of the potential material Federal tax consequences of the plan to the debtor, any successor to the debtor, and a hypothetical investor typical of the holders of claims or interests in the case, that would enable such a hypothetical investor of the relevant class to make an informed judgment about the plan, but adequate information need not include such information about any other possible or proposed plan and in determining whether a disclosure statement provides adequate information, the court shall consider the complexity of the case, the benefit of additional information to creditors and other parties in interest, and the cost of providing additional information….

While courts have developed checklists for determining whether a disclosure

statement meets the requirements of section 1125 (*see Westland Oil Dev. Corp. v. MCorp*

*Mgmt. Solutions, Inc.,* 157 B.R. 100, 102 (S.D. Tex. 1993) (citing *In re Metrocraft Publ'g*

*Servs., Inc.,* 39 B.R. 567, 568 (Bankr. N.D. Ga. 1984) (compiling factors)), the issues

presented to the court in the case at bar relate less to whether the Disclosure Statement

meets the tests fixed by those courts. Rather, the objecting parties argue that the

---

[2] 11 U.S.C. §§ 101 *et seq.*

3

Disclosure Statement contains inaccurate or incomplete information.  Below the court addresses some of the questions raised by the objecting parties.  The court notes, however, that the "safe harbor" provided in Code § 1125(e) for one soliciting acceptances or rejections of a plan will not protect Debtors or their professionals should they withhold from disclosure information known to them which falls within the definition of "adequate information." *See Yell Forestry Prods., Inc. v. First State Bank of Plainview*, 853 F.2d 582, 584 (8th Cir. 1988) (implying that a failure to provide adequate information could lead to a finding of bad faith and denial of the protection of the section 1125(e) "safe harbor"); *see also Official Comm. of Equity Sec. Holders v. The Wilson Law Firm (In re Mirant Corp.)*, 334 B.R. 787, 792-93 (Bankr. N.D. Tex. 2005).  The potential liability for inadequate disclosure provides, in the court's judgment, sufficient sanction to protect against misleading disclosure in connection with the Plan.  Moreover, below, the court gives Debtors (and their co-Plan proponent, Russco Energy LLC ("Russco")) the opportunity to modify the Disclosure Statement as they deem necessary to ensure that it complies with section 1125.

The objecting parties also argue that the Plan is facially unconfirmable.  On the authority of cases such as *In re Market Square Inn, Inc*., 163 B.R. 64, 68 (Bankr. W.D. Pa. 1994), *In re Allied Gaming Management, Inc*., 209 B.R. 201, 202 (Bankr. W.D.  La. 1997) and *In re Silberkraus*, 253 B.R. 890, 899 (Bankr. C.D. Cal. 2000), they argue the court should disapprove the Disclosure Statement and so avoid the unnecessary expense of going through a fruitless Plan confirmation process.  The court also deals with that argument below.

Turning first to the adequacy of the Disclosure Statement, subject to the following, the Disclosure Statement will be APPROVED:

1. BTMK shall provide to Debtors and Russco by Monday, June 4, 2012, a statement respecting BTMK's position in the suit by Debtors against BTMK pending in the United States District Court for the Northern District of Texas, Fort Worth Division. Such statement, clearly marked out from other discussion in the Disclosure Statement and clearly attributed to BTMK and not to Debtors or Russco, shall be included in the Disclosure Statement in proximity to the discussion of the suit in the Disclosure Statement at pages 17-21.

2. Inglish and Dodson shall provide to Debtors and Russco by Monday, June 4, 2012, a statement respecting their positions concerning termination of mineral leases between each of them and Debtors. Such statement, clearly marked out from other discussion in the Disclosure Statement and clearly attributed to Inglish or Dodson, as the case may be, shall be included in the Disclosure Statement in proximity to the discussion of Debtors' mineral leases in the Disclosure Statement at pages 28-29.

3. Debtor shall add to the Disclosure Statement the following:

   a. Information regarding each member of the reorganized Debtors' management and board of directors. Such information shall include disclosure of the bases for appointment of a trustee in the Rife Oil Properties Case. This requirement may be met by inclusion in appendices to the Disclosure Statement of the court's order directing appointment of a

trustee together with reference to such order in the text of the Disclosure
Statement.

b.  Information at least as complete as that provided in Debtors' schedules
and statement of affairs respecting Debtors' prepetition transactions with
and potential claims against insiders.[3]

c.  A discussion of environmental risks and hazards pertinent to Debtors'
business.

d.  Such additional information in categories other than the three discussed
above that Debtors or Russco may deem necessary to comply with Code §
1125.

As to whether the Plan is facially unconfirmable, to the extent that that may be the
case, it appears to the court that many of the issues raised by the objecting parties could
be cured at confirmation. For example, the exculpation of Debtors' and Russco's
principals, professionals, and employees may be in conflict with *In re Pacific Lumber
Co.*, 584 F.3d 229, 252-53 (5th Cir. 2009). The exculpation, however, can be easily
eliminated or modified at confirmation or by the confirmation order to conform to *Pacific
Lumber. See In re Pilgrim's Pride Corp.*, 08-45664-DML-11, 2010 WL 200000, at *4-5
(Bankr. N.D. Tex. 2010).

There are, however, several questions the court considers key to the
confirmability of the Plan. First, does the Plan comply with Code § 1129(a)(11) – *i.e.*, is
it feasible? Second, does the Plan's proposed use of the $2,160,000 bond posted by
Russco in the registry of the court conflict with the uses intended for that bond at the time

---

[3]    In the court's view a failure to disclose fully potential claims of Debtors against insiders would
       leave proponents of a plan outside the safe harbor of section 1125(e).

of its posting – *i.e.*, will BTMK be entitled to draw on the bond? Third, is the Plan's separate classification of any deficiency claim of BTMK violative of the Code such that the Plan does not satisfy the text of Code § 1129(a)(1) or that the Plan would be otherwise unconfirmable? Finally, fourth, was the Plan filed in good faith as required by Code § 1129(a)(3)?

Pursuant to Federal Rule of Civil Procedure 42, applicable to plan confirmation pursuant to Federal Rules of Bankruptcy Procedure 7042 and 9014(c), the court may consider issues pertinent to a dispute in the order that best serves the efficient and economical disposition of the case. *See In re Tex. Rangers Baseball Partners*, 434 B.R. 393, 397 & n.2 (Bankr. N.D. Tex. 2010). Federal Rule of Bankruptcy Procedure 1001 states that the Rules are to be "construed to secure the just, speedy, and inexpensive determination of every case and proceeding." *See Katchen v. Landy,* 382 U.S. 323, 328, 86 S.Ct. 467, 472, 15 L.Ed.2d 391 (1966) ("[T]his Court has long recognized that a chief purpose of the bankruptcy laws is 'to secure a prompt and effectual administration and settlement of the estate of all bankrupts within a limited period.'"). The court thus concludes that it should address the first three issues mentioned above prior to allowing Debtors and Russco to disseminate the Plan and Disclosure Statement to creditors. Should BTMK, Inglish, or Dodson assert that the Plan was not filed in good faith, the court will consider that issue as well.

Debtors, Russco, BTMK, Inglish, and Dodson are therefore directed to obtain a setting at a mutually satisfactory time prior to June 14, 2012, or after July 8, 2012, but not later than July 31, 2012, at which time the court will consider such three issues for purposes of confirmation of the Plan. Any party in interest may participate in such

hearing, of which Debtors shall give notice to all entities entitled to notice under Federal Rule of Bankruptcy Procedure 2002(b).  Any such party may file a brief in support of or opposed to confirmation of the Plan no later than eight days prior to such hearing.

BTMK has filed a plan in Debtors' cases.  The court has not considered the disclosure statement that would accompany that plan.  The court will defer any consideration of BTMK's plan or disclosure statement until after the hearing described in the preceding paragraph.  Depending on the court's determination of the issues discussed above and the court's assessment of the probability that the Plan will be confirmed, the court, at such hearing, shall determine how to proceed with BTMK's plan.

It is so **ORDERED.**

### ### END OF MEMORANDUM ORDER ###